NOT FOR PUBLICATION

FILED

JUN 08 2011

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

In re                                    Case No. 05-10001-A-7
                                         DC Nos. CF-1; CF-3; JF-10
DDJ, INC.


              Debtor.          /
In re                                    Case No. 05-10002-A-7
                                         DC Nos. CF-2; CF-3; JF-10
DDJ, LLC


              Debtor.          /

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

Various matters are under submission in the chapter 7 cases
of DDJ, Inc. (05-10001-A-7) and DDJ, LLC (05-10002-A-7).  They
are:

- Motion to Vacate Court Order Dated September 5, 2007
  approving Settlement Agreement (DC No. CF-2 in the DDJ, LLC
  case).
- Motion to Remove James E. Salven as Chapter 7 Trustee (DC
  No. CF-1 in the DDJ, Inc. case).
- Motion to Reconsider Order Granting Sale of Property (DC No.
  CF-3 in both cases).
- Motion for Sanctions (DC No. JF-10 in both cases).

1

1    The motions with Docket Control Numbers "CF" were brought by
2    Connie Flores, and the motions with Docket Control Numbers "JF"
3    were brought by her husband, Joe Flores.  All the motions are the
4    latest in skirmishes between Mr. and Mrs. Flores and the chapter
5    7 trustee.  Both cases were filed in 2005.  In 2007, Mr. and Mrs.
6    Flores and the chapter 7 trustee entered into a settlement of the
7    issues between them.  However, Mr. and Mrs. Flores now challenge
8    that settlement and seek to vacate it.  They seek to remove Mr.
9    Salven as trustee of the DDJ, Inc. case, and they ask the court
10   to reconsider an order approving the sale of the trustee's
11   litigation claims.  Additionally, they seek sanctions.

12   The court will, herein, enter its findings of fact and
13   conclusions of law on the motions described above, which were
14   taken under submission.   This memorandum contains findings of
15   fact and conclusions of law required by Federal Rule of
16   Bankruptcy Procedure 7052 and Federal Rule of Civil Procedure 52.
17   This is a core proceeding as defined in 28 U.S.C. §157(b)(2)(A).

18   The court will first describe the background relevant to
19   each matter.

20   In 1999, Joe Flores sued DDJ, Inc. and DDJ, LLC in the
21   United States District Court for the Eastern District of
22   California.  That case became known as "Flores I."

23   Dennis Hagobian was an officer and director of DDJ, Inc.,
24   and Victoria Hagobian was a nominal director of DDJ, LLC for a
25   time.  In the course of the Flores I litigation, Mr. Flores
26   attempted to add Dennis Hagobian as a defendant.

27   Eventually, judgment was entered against the debtor
28   corporations, but not against any individual defendant, in 2004.

2

1  Mr. Flores then began to try to collect on the judgment.  The
2  corporations did not have the money to pay.

3      Mr. Flores then filed suit against the Hagobians in 2004 in
4  the district court.  That lawsuit became known as "Flores II."

5      He then filed another action in 2005 against Emerick and
6  Fike, et al., and that became known as "Flores III."

7      The debtors filed their petitions for bankruptcy in January
8  2005.

9      Flores I, II, and III were stayed until the trustees for
10 each of the debtors could settle their disputes with Mr. and Mrs.
11 Flores over who owned the Flores I alter ego claims and the
12 Flores II fraudulent transfer claims.

13     The trustees and the Floreses entered into a settlement.
14 That settlement provided that the trustees would join the Flores
15 I and Flores II matters and abandon Flores III to Mr. and Mrs.
16 Flores.  Since the stay was lifted, all three matters have been
17 dismissed and final judgments entered.

18     Mr. Flores then filed a related action in bankruptcy court
19 against the debtors, their trustees, and the Hagobians, among
20 others, alleging that the Floreses should stand as a priority
21 creditor on the basis of asserted PACA violations.  That action
22 was brought in the Enoch Packing Company bankruptcy case.  That
23 adversary proceeding became known as "Flores IV."

24     This court dismissed Flores IV on the basis that no PACA
25 trust had been preserved.  That ruling was affirmed by the
26 district court and also affirmed by the Ninth Circuit.

27     In 2008, Mr. Flores filed an action in Fresno County
28 Superior Court reiterating and adding to the claims set forth in

3

1  Flores II.  Then there was a dispute in that action about whether
2  Mr. Flores was a vexatious litigant.
3      In 2009, Mr. Flores filed a second action in Fresno County
4  Superior Court repeating, to a greater or lesser extent, the
5  claims that had been made in the Flores I action.
6      In short, there has been a great deal of litigation by Mr.
7  and Mrs. Flores against the debtors and others.
8
9  DDJ, LLC (DC No. CF-2) Motion to Vacate Court Order Approving
10 Settlement Agreement.
11     A hearing on this motion was held March 9, 2011, and the
12 court took it under submission at that time.  In 2007, a
13 Settlement Agreement was entered into between and among Mr. and
14 Mrs. Flores, Mr. Salven as chapter 7 trustee for DDJ, Inc., and
15 Beth Stratton (then chapter 7 trustee for DDJ, LLC).  The court
16 had referred the dispute among the parties to the Honorable
17 Michael S. McManus, Bankruptcy Judge for the Eastern District of
18 California, as settlement judge.  Following meetings with Judge
19 McManus, the parties entered into a Settlement Agreement, which
20 Judge McManus caused to be put on the record on December 29,
21 2006.  Subsequent to that time, a dispute arose about the
22 Settlement Agreement, and the parties revised it in a handwritten
23 document.  The parties then asked the court to approve it as the
24 September 5, 2007 Settlement Agreement, which incorporated both
25 the agreement reached with the assistance of Judge McManus and
26 the handwritten document.  It is the order approving this
27 settlement which by this motion Mr. and Mrs. Flores seek to
28 vacate.

4

The motion is brought under Federal Rule of Bankruptcy
Procedure 9024, which incorporates Federal Rule of Civil
Procedure 60.  Under Rule 60(b), a court may relieve a party from
a final judgment or order if, among other reasons, the judgment
is void (Rule 60(b)(4)); or for any other reason that justifies
relief (Rule 60(b)(6)).  The Floreses proceed on these grounds.

Relief under Rule 60(b) is an extraordinary remedy and is
not a substitute for direct appeal of a judgment.  When an error
of law is alleged, the proper vehicle for an attack on that error
is a direct appeal.  In re Design Classics, Inc., 788 F.2d 1384
(8th Cir. 1986).  A motion under Rule 60(b) must be made within a
reasonable time.

Here, the order approving the Settlement Agreement was
entered September 5, 2007.  A hearing on the motion to vacate was
held in March 2011.

The motion is based on the grounds that the ruling in Baum
v. Duckor, Spradling & Metzger, 72 Cal. App. 4th 54 (1999) holds
that professional malpractice and breach of fiduciary duty claims
may not be assigned or sold by a bankruptcy trustee under
California law and public policy.  According to Flores, the
September 5, 2007 Settlement Agreement is illegal because under
it, the claims of the chapter 7 trustee in DDJ, LLC were assigned
to DDJ, Inc.  The alleged assigned claims were for breach of
duty, professional negligence, and malpractice against the
"Georgeson Defendants."

According to Mr. and Mrs. Flores, the "void" assignment of
malpractice claims makes the entire settlement invalid.

The language that the Floreses find troubling is in the

5

transcript from the December 29, 2006, portion of the Settlement

Agreement.   In that document, Judge McManus stated:

> "The LLC case, DDJ, LLC, will assign - - will either assign
> its claims as presented in the District Court Flores I and
> II matters to DDJ, Inc., or, if assignment is - - doesn't
> work to the best advantage of the parties - - the two - -
> the two bankruptcy estates, it will remain in the name of
> DDJ, LLC, but DDJ, Inc. and its trustee will control the
> disposition of those assets."

Judge McManus then went on to state "The LLC - - LLC's

rights are being either assigned to the Inc. case or it' LLC

controlled by the Inc. case."

And further, the transcript reads:

> MR. ARMSTRONG [counsel for Mr. Salven]: Any rights of the
> LLC will be assigned to the Inc. case.   Whatever rights the
> LLC may - -
>
> MS. STRATTON [former trustee for DDJ, LLC]: All LLC's claims
> - -
>
> THE COURT: All LLC claims.
>
> MS. STRATTON:  - - causes of action.
>
> THE COURT: Everything.
>
> MS. STRATTON: It will be assigned to Inc.
>
> THE COURT: Right.   That's taken care of in that general
> provision.

At the time the parties entered into the Settlement

Agreement, they were concerned with claims that were then pending

in two District Court actions known as Flores I and Flores II and

also in an action in State Court.   Only the action in State Court

remains pending.   The District Court actions have been decided

adversely to the bankruptcy estates and to Flores.

The motion to vacate the court ordered Settlement Agreement

will be denied by separate order.   First, the motion was brought

more than three years after an order approving the Settlement

1  Agreement was entered.   In the intervening time, all parties have

2  relied on the Settlement Agreement.

3       Second, there is no requirement in the Settlement Agreement

4  that any non-assignable claims be assigned from the LLC to the

5  Inc. case.   Rather, the agreement provides that if it is

6  appropriate to assign the claims, they will be assigned, and if

7  it is not appropriate, they will be jointly prosecuted.   The

8  declaration of James Salven in support of his opposition to the

9  motion to vacate the Settlement Agreement states that he jointly

10  prosecuted the claims of the respective bankruptcy estates.

11  There was no assignment.

12       There are no extraordinary circumstances existing to justify

13  relief under Rule 60(b)(6).   Rather, the outcome of the

14  Settlement Agreement was not what the parties hoped.   That is not

15  a reason to set aside the Settlement Agreement.

16       For the above reasons, the motion to vacate the Settlement

17  Agreement will be denied.

18

19  DDJ, Inc. (DC No. CF-1) Motion to Remove James E. Salven as
    Chapter 7 Trustee of DDJ, Inc.

20       On January 10, 2011, Connie Flores filed  a motion to remove

21  James E. Salven as trustee for DDJ, Inc.  A hearing on that

22  motion was held March 9, 2011, after which time the court took

23  the matter under submission.   The motion states that Salven has

24  violated Bankruptcy Code § 704(a)(1), (2), (4), and (6).   The

25  motion also refers to Bankruptcy Code § 324(a).   Section 324(a)

26  provides that the court may remove a trustee for cause.   Section

27  704(a) describes the duties of a chapter 7 trustee.   According to

28  Flores, Salven has been incompetent in the actual performance of

his duties; has failed to investigate the financial affairs of
the debtor; has failed to take appropriate litigation steps; has
misappropriated assets from the estate by conspiring with
adversaries; has breached his contracts; has breached fiduciary
duties; and has disobeyed the court's September 5, 2007 Order
Approving Settlement Agreement.  She further asserts personal
misconduct and abuse of process.

Salven filed a declaration denying each of the allegations
in the motion.  The underlying factual history that gave rise to
the dispute is not in controversy.  It is, rather, the
interpretation of those facts about which the parties disagree.

In the early part of the DDJ, Inc. case and the related case
of DDJ, LLC, Joe Flores, the spouse of Connie Flores, filed
numerous motions seeking to pursue various claims in the District
Court.  Those claims are generally known as the Flores I and
Flores II cases.  Eventually, Flores sought to remove Salven as
trustee by a motion filed in August 2006.  The court referred the
matters pending among the trustees of the two chapter 7 cases and
Mr. and Mrs. Flores to a settlement judge, and the Honorable
Michael S. McManus, Bankruptcy Judge for the Eastern District of
California, held a settlement conference in the two cases.  As a
result of the settlement conference, the parties entered into a
Settlement Agreement. After that agreement was modified, the
court approved a settlement among the parties by an order dated
September 5, 2007.  That Settlement Agreement contemplated that
Salven would prosecute claims of DDJ, Inc. and DDJ, LLC, to
conclusion.

As approved, the Settlement Agreement provided that Joe

8

Flores and Connie Flores would continue to be parties plaintiff in Flores I and Flores II and would jointly prosecute those cases with Salven to their conclusion.  Those cases, District Court cases, have now been concluded in rulings adverse to the estates and to Mr. and Mrs. Flores.

The Settlement Agreement also provided that a case known as "Flores III, District Court No. CIV-05-0291" was preserved solely for the benefit of Joe and Connie Flores.

Also as a result of the Settlement Agreement, Mr. and Mrs. Flores withdrew their motions to remove Mr. Salven as trustee of the DDJ, Inc. case and Ms. Stratton as trustee of the DDJ, LLC case.

There is also a state court action ("State Court Action"). That action was to be prosecuted jointly by Salven and by Flores. Ultimately, Salven decided to dismiss certain claims in the State Court Action which constituted professional malpractice claims against the Georgeson law firm.  Regarding this claim, Salven states:

> "After meeting with Mr. Georgeson, his attorney, Justin Campagne, Esq., and Mr. Armstrong on November 23, 2010, listening to the facts as explained by Mr. Georgeson that they would move into evidence, considering the scant information provided by Mr. Nunez as special counsel to me regarding the State Court Action, I directed Mr. Armstrong to send a letter to Mr. Nunez to immediately dismiss the Georgeson & Belardinelli defendants and their principals from the State Court Action with prejudice."

Prior to November 2010, Mr. Salven also learned that he had been sanctioned in the State Court Action, in which, pursuant the September 5, 2007 Settlement Agreement, he was represented by Henry Nunez.  According to Mr. Salven,

"On November 23, 2010, I personally spoke telephonically with Mr. Nunez, who admitted that the sanctions were issued, and further, that he personally paid the sanctions without ever advising me of the same."

According to Mr. Salven, Mr. Nunez never apprised him of outstanding discovery and only advised Salven of the monetary sanctions when Salven telephoned him about them.

Salven made reasonable litigation decisions in connection with the State Court Action. His actions with respect to the State Court Action did not amount to breach of fiduciary duty or failure to pursue preferential transfers or fraudulent conveyances. Rather, they were appropriate litigation judgment.

Further, Salven offered to sell the claims of the estate in the State Court Action to Mr. and Mrs. Flores. However, an overbid was received from certain defendants for the State Court Actions known as the "Hagobian Defendants" and others. Ultimately, the court approved that overbid.

Salven made a reasonable business decision to sell the claims, and that decision has been approved by this court.

The proper test for removal of a bankruptcy trustee is totality of the circumstances. In the matter of AFI Holding, Inc., 530 F.3d 832, 848-849 (2008). The party seeking to remove a chapter 7 trustee has the burden of proof.

Based on all the facts and circumstances of the DDJ, Inc. chapter 7 case, the court finds and concludes that Mrs. Flores has failed to meet her burden of proof. Salven entered into a Settlement Agreement with Mr. and Mrs. Flores, which was approved by this court. Subsequently, he made a business decision to sell certain claims to the Hagobian Defendants and others. That sale

1  was approved by this court.

2      Additionally, there is no reason for an evidentiary hearing.
3  There is little, if any, dispute about the facts.  Rather, the
4  dispute is about whether based on those facts, there has been a
5  breach of the duty that the chapter 7 trustee owes to the
6  creditors and to the estate.  The court has concluded that there
7  was no such breach.

8      For the above reasons, the motion to remove Mr. Salven will
9  be denied by separate order.

10

11

12 <u>Motion to Reconsider Court Order Approving Sale of Property in
both DDJ, Inc. and DDJ, LLC (DC Nos. CF-3 in each case).</u>

13     On April 26, 2011, Connie Flores filed a motion asking the
14 court to reconsider its order approving sale of the litigation
15 claims.  Joe Flores joined in that motion.  The claims of which
16 the court approved a sale were claims in a state court lawsuit
17 captioned <u>In re James E. Salven, et al. v. Dennis Hagobian, et</u>
18 <u>al.</u>, State Court Case No. 08-CE-CG-03585 filed in the Fresno
19 County Superior Court.

20     A hearing on the motion to approve the sale of the claims
21 had been held December 16, 2010.  The court took the matter under
22 submission and put its Findings of Fact and Conclusions of Law on
23 the motion to approve the sale on the record on March 9, 2011.
24 An order was entered on April 11, 2011.  The motion for
25 reconsideration was filed April 26, 2011, under Federal Rule of
26 Bankruptcy Procedure 9023; Federal Rule of Civil Procedure
27 52(a)(5); and Federal Rule of Civil Procedure 60(b)(3), (4), (6),
28 and (d)(3).

                                11

The order granting sale of litigation claims states:

"1.   The Motion for Sale of Litigation Claims Pursuant to 11 U.S.C. § 363(b) filed by James E. Salven, as Chapter 7 Trustee for the Estate of Ddj, Inc., Case No. 05-10001, and pursuant to the December 29, 2006 Settlement Agreement previously approved by this Court, as the representative of the bankruptcy estate of DDJ, LLC, Case No. 05-10002, is granted;

2.   The bankruptcy estates of DDJ, Inc. and DDJ, LLC are authorized to sell the litigation claims to the Hagobian Defendants, the Davidson and Hedberg Defendants, and the Yeramian/Vartan Defendants, as prayed for in the Motion and in conformity with Mr. Salven's Further Declaration filed on December 9, 2010 in support of the Motion for the total sum of $60,750.55 consisting of $55,000.00 in cash to be received from the Hagobian and Davidson/Hedberg Defendants, and a waiver of costs incurred by the Yeramian/Vartan Defendants in regards to costs incurred in appeal in relation to the State Court action, commonly referred to as Flores V, bearing Fresno County Superior Court case No. 08-C-CG-035850DSB; and

3.   A copy of this order may be filed or lodged in Fresno County Superior Court case No. 08-CE-CG-03585-DSB."

The grounds for the motion now before the court are that the documentary evidence in support of the motion for sale of litigation claims was insufficient, particularly in light of the evidence in opposition filed by Mr. and Mrs. Flores; that the moving parties violated the court's deadline for overbids; that Mr. Salven, Mr. Armstrong (his attorney), and Ralph Swanson misrepresented the overbid situation; that the claims in the litigation are personal and cannot be assigned or sold; and that Mr. Salven's business judgment does not meet the appropriate standards.

A motion for order approving sale of litigation claims pursuant to Bankruptcy Code § 363(b) was filed by James Salven on October 19, 2010.  In that motion, Salven stated that he intended to sell certain litigation claims to CBP4Justice, LLC.  The

members of CBP4Justice, LLC, are Connie Flores and two sons of
Mr. and Mrs. Flores.  The claims in question were the claims in
the State Court Action, and the proposed sale price was the first
$150,000 collected on any judgment.  Additionally, pursuant to
the proposed sale, Mr. and Mrs. Flores would withdraw any claims
against the estates, and the administrative expenses of Mr. Nunez
would be limited to $5,000.

At the hearing, objections were lodged by the Hagobian
Defendants.  They sought time to present a cash settlement offer
to the trustee.  The court allowed the defendants, two entities
who opposed the motions, to present a cash settlement offer.  The
court stated:

> "So, I am going to set these two motions out for final
> hearing, and the final hearing will be December 16th at 9:00
> a.m.  And any further opposition to either motion needs to
> be filed and served by November 26th, and any - and that
> further opposition could include a proposed offer that you'd
> like to see the court accept.  Any reply needs to be filed
> and served by no later than December 9th."

At the November 2, 2010 hearing, the court additionally
stated that "If there's going to be an overbid by either of the
two objecting parties, it [shall] be in Mr. Armstrong's - - sent
to Mr. Armstrong for his receipt by November 22nd."

When Mr. Flores pointed out that he wouldn't know what the
over bidders would be bidding, the court said "Well, they can
serve it on Mr. Armstrong, and he can give you a copy."

The civil minute order following the hearing on November 2,
2010, stated:

> "IT IS ORDERED that the Trustee's Motion for sale is
> continued to 12/16/10 at 9:00 a.m. in Courtroom 11, Fifth
> Floor, 2500 Tulare Street, Fresno, California.

13

IT IS FURTHER ORDERED that any further opposition shall be filed and served by 11/26/10.  Any reply shall be filed and served by 12/9/10.  Any overbids shall be presented to Mr. Armstrong by 11/22/10."

On December 9, 2010, James Salven filed a declaration stating that he had received a timely counter-offer from the Hagobian Defendants, the Vartan Defendants, and the Davidson and Hedberg Defendants, to purchase the claims in question.  He describes that their offer consisted of $55,000 in each and an agreement not to pursue additional costs in a lawsuit known as Flores VI.  The declaration goes on to state:

> "Based upon the fact that Special Counsel has not yet progressed beyond the pleading stage in the state court actions, his failure to communicate with me and/or General Counsel, the fact that the outcome in Flores I and Flores II was not favorable for the estates, at this juncture it is my considered business opinion that the offer to sell the claims for $55,000.00 cash now, plus waiver of costs by the Vartan Defendants, to the Hagobian, Davidson and Hedberg, and Vartan Defendants is in the best interest of the estates as it provides cash now, closure, and is not speculative as is the CBP4Justice, LLC offer.  I would ask the Court to consider my business opinion and to rule on which presents a better scenario for the bankruptcy estates, taking money now or risk litigation in perpetuity and futility with the risk of the estates, its special counsel, and creditors being borne with administrative expense claims that would render these estates administratively insolvent.  I respectfully request that the Court consider this and approve the sale to the Hagobian Defendants, the Davidson and Hedberg Defendants and the Vartan Defendants which I believe presents the best offer to the bankruptcy estate."

On December 14, 2010, Joe and Connie Flores filed objections to this declaration by James Salven.  Also on that date, Mr. Flores filed a Reply Memorandum in opposition to the proposed sale to the three groups of defendants and in support of the sale of the litigation claims to CBP4Justice, LLC.  On December 16th, a hearing was held, and each party presented argument.

On March 9, 2011, the court put on the record its Findings

14

of Fact and Conclusions of Law with respect to the motions in each case for order approving sale of the litigation asset. At that time, the court found and concluded that sale to the Hagobian/Vartan and Davidson and Hedberg Defendants was in the best interest of the estate and that Mr. Salven had exercised reasonable business judgment in recommending that resolution.

Moving party has failed to come up with any newly discovered evidence not available at the time of the original hearing and has failed to point to evidence that establishes a manifest error of law or fact. Mr. and Mrs. Flores had ample time to make a higher bid.

For the above reasons, the motion to reconsider the order granting sale is denied. Additionally, the court finds, based on the entirety of the record, that the trustee and the buyers have proceeded in good faith. The purchasers have been involved in litigation in various fora for numerous years with Mr. and Mrs. Flores. Attempting to resolve that litigation by purchasing the claims from the trustee is, in the court's view, in good faith under Bankruptcy Code § 363(m).

Motions for Sanctions in each case.

Joe Flores has filed motions for sanctions in each case under DC No. JF-10. Connie Flores has joined in the motions for sanctions. The motions for sanctions were filed in February 2011. The motions for sanctions contend that Salven and Armstrong "have both made misrepresentations to this Court (which amounts to falsity and fraud on this Court) in order to gain an

15

1  upper hand and favorable ruling from this Court in what Salven
2  and Armstrong coined as a business decision to sell claims."
3      The statements made by Salven and Armstrong, of which Flores
4  complains, are simply statements with which Mr. Flores disagrees.
5  They are not statements that are sanctionable under Federal Rule
6  of Bankruptcy Procedure 9011.
7      The court is denying the motion to reconsider sale of the
8  litigation claims; to remove the trustee; and to reconsider the
9  September 2007 Settlement Agreement.  All of the issues that
10 Flores raises in the motion for sanctions are issues that are
11 addressed in the other motions before the court.  The fact that
12 Mr. and Mrs. Flores disagree with Mr. Salven's and Mr.
13 Armstrong's interpretation of events does not mean that Mr.
14 Salven's or Mr. Armstrong's statements were misrepresentations.
15 The declarations of Mr. Salven and Mr. Armstrong filed in
16 opposition to the motions for sanctions make it clear that both
17 Mr. Armstrong and Mr. Salven were proceeding in good faith.  The
18 fact that reasonable people may differ does not mean that
19 sanctions are appropriate.
20     For the foregoing reasons, the motions for sanctions will be
21 denied.

24 DATED: 6/8/11

WHITNEY RIMEL, Judge
United States Bankruptcy Court

16